## THE CHIEF.

(District Court, E. D. Pennsylvania. July 23, 1906.)

### No. 40.

SALVAGE—TOWING DISABLED TUG IN FROM SEA—COMPENSATION.

A tug became partially disabled by the leaking of her boiler while passing up the Atlantic coast and gave distress signals. She was taken in tow behind a barge by another tug and towed to a port. The rescuing tug and barge were together worth about $135,000, and were chartered at $500 per day. They were delayed 1½ days and consumed 22 tons of coal extra in rendering the service. The disabled tug was sold for $5,600. She was not in any great danger when taken in tow, nor were the other vessels or their crews subjected to any great danger or required to go on board the towed vessel. *Held*, that the service was one of salvage,

but not of high order, and that the rescuing tug and barge were entitled to an award therefor of $1,000.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Salvage, §§ 23, 24, 80–83.

Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit for salvage.

Francis S. Laws and John F. Lewis, for libelant.

J. Warren Coulston and Alfred Driver, for respondent.

HOLLAND, District Judge. The claim of the steam tug Veit against the steam tug Chief in this libel is for salvage. The Chief, a wooden boat about 102 feet long, 23 feet beam, 10½ feet in depth, was built in 1892, and had been engaged in southern waters. On May 13, 1902, she left Mobile for Philadelphia, for the purpose, among other things, of providing a new boiler. On her way north the boiler then in use began to leak, and on May 21, 1902, when she was about 25 miles north of Cape Hatteras Shoals, the leak had increased to such an extent that she was unable to proceed further and raised a distress signal, which was sighted by the tug Veit. The wind was blowing a gale of about 25 miles an hour from the northeast. The boiler in the Chief began leaking early in the morning and grew worse as the vessel strained in the heavy seas. Shortly after she had been taken into tow, the blow cock blew out and let the entire contents of the boiler (some 3,500 gallons) into the hold. At the time she was taken into tow her machinery could still be operated, which enabled her to maneuver as directed by the Veit. The Veit was on her way south with the barge Providence in tow at the time, and at the request of the captain of the Chief took the latter in tow behind the Providence, to which point the Chief was propelled by her own machinery and without any aid from the crew of either of the boats. The pumps were successfully worked by the crew of the Chief, and the water was all pumped out by them without help from either of the other crews. The Veit experienced no difficulty in towing both the barge and the Chief into port. The value of the Veit was between $25,000 and $30,000, and that of the barge Providence about $110,000. This tug and barge were under charter at $500 per day. The Veit, as a result of its coming up with the Chief, deviated from its course about 35 miles, was delayed on its voyage 1½ days, and consumed about 22 tons of coal extra. The Chief was in no very great danger at the time she was taken in tow, and none of the property of the Veit or the Providence was greatly endangered, nor was there any great danger to the crew of either vessel in the service rendered the Chief. The latter was sold at a marshal's sale for $5,600. The claim for salvage was for $5,000.

This is one of the cases that comes close along the line which divides the ordinary towage service from that of salvage service. We are of the opinion, however, that this was salvage service. The Chief was partially disabled and had been flying danger signals and requested the aid of the Veit. It required very little skill to render the required

services, as the Chief was still in condition to run her machinery and help herself to the extent of maneuvering into position to be taken in tow, and the danger to person and property was not very great. The matters which enter into and control in fixing the value of salvage service are set forth in The Blackwell, 77 U. S. 14, 19 L. Ed. 870: (1) The labor expended by the salvors in rendering the salvage service. (2) The promptitude, skill, and energy displayed in rendering the service and saving the property. (3) The value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed. (4) The risk incurred by the salvors in securing the property from the impending peril. (5) The value of the property saved. (6) The degree of danger from which the property was rescued. In this case there was no very arduous additional labor rendered, nor was any of the crew required to perform any service on board the Chief. They rendered her service, however, when she was in distress, at the expenditure of additional time and cost.

We are of opinion, under the circumstances, that the total amount of salvage in this case should be $1,000, with costs of suit; this amount to include the separate claims of the chief engineer and chief mate. Decree accordingly.